Case 4:15-cv-00160 Document 42 Filed in TXSD on 01/24/17 Page 1 of 13

United States District Court
Southern District of Texas
**ENTERED**
January 25, 2017
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| STEPHANIE MWARABU, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:15-CV-00160 |
| | § | |
| PENNCRO ASSOCIATES, INC., | § | |
| | § | |
| Defendant. | § | |

## OPINION AND ORDER

Pending in the above-referenced cause are Plaintiff and Defendant's cross-motions for summary judgment. Docs. 34, 35. Having considered the motions, responses, replies, relevant law, and for the reasons that follow, the Court DENIES Plaintiff's Motion for Partial Summary Judgment, Doc. 34, and GRANTS Defendant's Motion for Summary Judgment, Doc. 35.

**I. Background**

The question presented by this case is whether Defendant Penncro Associates, Inc. ("Defendant" or "Penncro") complied with the Worker Adjustment and Retraining Notification Act of 1988 ("WARN," "WARN Act," or "Act"), 29 U.S.C. §§ 2101–2109, when it laid off approximately 157 employees at its Bryan, Texas facility in the winter of 2014 after losing a contract with its largest client, Bank of America ("BoA").

Penncro operated telephone call centers that engaged in collection efforts, mortgage services, customer service, and other direct-call services for customers. Doc. 35-1 at 1. The largest of Penncro's customers was BoA. *Id.* at 2. On April 1, 2014, Penncro and BoA entered into a General Services Agreement ("GSA") for a term of three years. Docs. 35-1 at 2, 8, 35-2 at 1. The GSA set forth the general terms and conditions under which Penncro would provide services to BoA and contained a termination clause, which allowed BoA to terminate the

contract, without cause, by providing Penncro with forty-five days' written notice. Doc. 35-1 at 2, 12.

Simultaneously, Penncro and BoA entered into a Scope of Work Agreement under which Penncro provided customer-communication services in support of BoA's mortgage-servicing business (the "Mortgage Servicing Project"). Docs. 35-1 at 54–74, 35-2 at 1. The Scope of Work Agreement set a termination date of March 31, 2015. Doc. 35-1 at 54. Like the GSA, it also contained a forty-five-day-written-notice-of-termination clause *Id.* at 56. The Bryan, Texas call center at the heart of this dispute was opened specifically to cater to BoA's Mortgage Servicing Project. *Id.* at 2.

Between September and November 2014, Penncro received performance approval ratings from BoA of 100, 99, and 98 percent, respectively. Docs. 35-1 at 75–77, 35-2 at 2. Nevertheless, on October 31, 2014, BoA verbally announced to Penncro that it would be terminating the Mortgage Servicing Project effective December 31, 2014, for reasons unrelated to Penncro's performance. Docs. 35-1 at 3–5, 35-2 at 2–3. During this call, BoA representatives told Penncro that BoA was actively looking for other work to send to Penncro to make up for the difference. Docs. 35-1 at 3–5, 35-2 at 2–3.

For the next five business days, Penncro scrambled to evaluate the impact of the anticipated loss of the BoA contract, including calculating the number of individuals affected and whether other work could be found to prevent anticipated layoffs. Doc. 35-1 at 4.  On November 10, 2014, Penncro called a meeting of all affected employees to notify them that BoA was terminating the Mortgage Servicing Project. Docs. 35-1 at 5, 35-3 at 33–34, 57–58. After this meeting, affected employees were provided written notice of the anticipated layoffs. Doc. 35-1 at 5–6, 80. The same day, Penncro notified the Texas Workforce Commission of the impending

mass layoff. *Id.* at 4–6, 81–82. The next day, November 11, 2014, Penncro received the official, written termination notice from BoA. Docs. 35-1 at 78, 35-2 at 2.

Plaintiff Stephanie Mwarabu ("Plaintiff" or "Mwarabu") attended the November 10 meeting and received the written notice. Doc. 35-3 at 28–36, 57–58. Pursuant to the notification of her impending termination, Mwarabu subsequently applied for—and received—unemployment. *Id.* at 86. Her last day of employment with Penncro was December 31, 2014. *Id.* at 53. Less than a month later, on January 20, 2015, Mwarabu then filed suit against Penncro on behalf of herself and a class of similarly situated individuals. Doc. 1. In her complaint, Plaintiff alleges that Penncro violated the WARN Act and seeks back pay and interest as damages. *See id.* at 6.

## II. Legal Standard

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Summary judgment under Federal Rule of Civil Procedure 56(c) is appropriate when, viewed in the light most favorable to the nonmovant, the court determines that "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1996). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

The movant initially bears the burden of identifying those portions of the pleadings and discovery in the record that it finds demonstrate the absence of a genuine issue of material fact on which the nonmovant bears the burden of proof at trial. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S.

871, 885 (1990) (citations omitted). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. When the moving party makes an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine dispute of material fact concerning every element of its cause of action in order to defeat the motion for summary judgment. *Edwards v. Your Credit, Inc.*, 148 F.3d 427, 431 (5th Cir. 1998); *Nat'l Ass'n of Gov't Emps. v. City Pub. Serv. Bd.*, 40 F.3d 698, 712 (5th Cir. 1994); *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). There is no genuine issue for trial if a rational trier could not find for the nonmoving party based on the evidence presented. *City Pub. Serv. Bd.*, 40 F.3d at 712–13 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 584–88 (1986)).

Allegations in a plaintiff's complaint are not evidence. *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) (internal citation and quotation marks omitted) ("[P]leadings are not summary judgment evidence."); *Johnston v. City of Houston*, 14 F.3d 1056, 1060 (5th Cir. 1995) (quoting *Solo Serve Corp. v. Westtown Assoc.*, 929 F.2d 160, 164 (5th Cir. 1991) (for the party opposing the motion for summary judgment, "'only evidence—not argument, not facts in the complaint—will satisfy' the burden."). Likewise, unsubstantiated assertions, conclusory allegations, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994). Instead, the nonmovant must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue of material fact for trial." *Giles v. Gen. Elec. Co.*, 245 F.3d 474, 493 (5th Cir. 2001)

(quoting *Celotex*, 477 U.S. at 324) (internal quotation marks omitted).

In ruling on a summary judgment motion, the court must consider all evidence and draw all inferences from the factual record in the light most favorable to the nonmovant, but the court may not make credibility determinations or weigh the evidence. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).

**III. Analysis**

The WARN Act requires covered employers who are planning a plant closing or mass layoff to give affected employees sixty-days' notice of such action. 20 C.F.R. § 639.2. The purpose of the advance-notice requirement is to provide "workers and their families some transition time to adjust to the prospective loss of employment, to seek and obtain alternative jobs and, if necessary, to enter skill training or retraining." *Id.* § 639.1. Although providing advance notice was the impetus behind it, *see Watson v. Mich. Indus. Holdings, Inc.*, 311 F.3d 760, 765 (6th Cir. 2002) (noting that Congress enacted the WARN Act in response to the extensive worker dislocation of the 1970's and 1980's when companies were merged, acquired, or closed without notice), the WARN Act recognizes that advance notice cannot always be ensured. Accordingly, the Act carves out three exceptions to the notice requirement. *See id.* § 639.9. If one of these exceptions applies, employers are required to give only "as much notice as is practicable." *Id.*

In this case, the parties do not dispute that Plaintiff has made out a prima-facie case.[1]

---

[1] To state a claim under the WARN Act, a plaintiff bears the burden of demonstrating that (1) the defendant is an "employer" within the meaning of 29 U.S.C. § 2101(a)(1); (2) plaintiffs are "affected employees" within the meaning of 29 U.S.C. § 2101(a)(5); (3) a "mass layoff" or "plant closing" occurred as defined by 29 U.S.C. § 2101(a)(2) and 29 U.S.C. § (a)(3); and (4) the defendant failed to give sixty-days' notice as required by 29 U.S.C. § 2102(a). 29 U.S.C. §

Rather, the crux of their dispute is whether the unforeseeable-business-circumstance exception applies to excuse Penncro's failure to provide its employees with the required sixty-days' notice. Penncro argues that it does. If the Court disagrees, Penncro urges in the alternative that the good-faith defense nevertheless applies to lessen its liability. Doc. 8 at ¶ 4.

### a. Unforeseeable-business-circumstances exception

The unforeseeable-business-circumstance exception applies when the closing or layoff was "caused by business circumstances that were not reasonably foreseeable as of the time that notice would have been required." 29 U.S.C. § 2102(b)(2)(A); *see also* 20 C.F.R. § 639.9(b). Thus, an employer must prove two elements to invoke the exception: (1) that the circumstances complained of were unforeseeable; and (2) that the circumstances complained of actually caused the mass layoff or plant shutdown. *Calloway v. Caraco Pharm. Labs., Ltd.*, 800 F.3d 244, 251 (6th Cir. 2015) (citation omitted). Here, Plaintiff only challenges the "unforeseeability" element.

Closings and layoffs are unforeseeable when "caused by some sudden, dramatic, and unexpected action or condition outside the employer's control." 20 C.F.R. § 639.9(b)(1). Examples of unforeseeable events provided by the regulations include "*a principal client's sudden and unexpected termination of a major contract with the employer*, a strike at a major supplier of the employer, and an unanticipated and dramatic major economic downturn." 20 C.F.R. § 639.9(b)(1) (emphasis added); *see also Carpenters Dist. Council of New Orleans & Vicinity v. Dillard Dept. Stores, Inc.*, 15 F.3d 1275, 1282 (5th Cir. 1994). However, because the regulations cannot address every potential unforeseeable circumstance, the courts have concluded that the applicability of the business-circumstances exception in any particular scenario involves a highly factual inquiry to be assessed on a case-by-case basis. *Hotel Emps. &*

---

2102(a); *In re Tweeter OPCO, LLC*, 453 B.R. 534, 539–40 (Bankr. D. Del. 2011).

*Rest. Emps. Int'l Union Local 54 v. Elsinore Shore Assocs.*, 173 F.3d 175, 180 (3d Cir. 1999) (citing 20 C.F.R. 639.9(b)(2)); *Loehrer v. McDonnell Douglas Corp.*, 98 F.3d 1056, 1060 (8th Cir. 1996) (citing 54 Fed. Reg. 16,062, 16,062–63 (1989)); *Watson*, 311 F.3d at 764 (citations omitted); *Pena v. Am. Meat Packing Corp.*, 362 F.3d 418, 421 (7th Cir. 2004) (citations omitted). In assessing the foreseeability of business circumstances in any particular situation, the court must focus "on an employer's business judgment." 20 C.F.R. § 639.9(b)(2). An employer is required only to "exercise such commercially reasonable business judgment as would a similarly situated employer in predicting the demands of its particular market." *Id.*

Importantly, because the WARN Act is not intended to deter companies from fighting to stay afloat, "[t]he Court looks to whether Defendant's judgment was reasonable at the time decisions were made, not at whether Defendant's judgment ultimately proved to be correct." *In re Advanced Accessory Sys., LLC*, 443 B.R. 756, 765 (Bankr. E.D. Mich. 2011). As several courts have explained:

> WARN was not intended to force financially fragile, yet economically viable, employers to provide WARN notice and close their doors when there is a *possibility* that the business may fail at some undetermined time in the future. Such a reading of the Act would force many employers to lay off their employees prematurely, harming precisely those individuals WARN attempts to protect. A company that is struggling to survive financially may be able to continue on for years and it was not Congress's intent to force such a company to close its doors to comply with WARN's notice requirement.

*Watson*, 311 F.3d at 765; *see also Roquet v. Arthur Andersen LLP*, 398 F.3d 585, 589–90 (7th Cir. 2005) (citation omitted). Rather, courts recognize that "[f]ree enterprise always involves risk . . . . Business downturns in a cyclical economy are not unusual, and we should not burden employers with the 'task of notifying employees of possible contract cancellation and concomitant lay-offs every time there is a cost overrun' or similar difficulty." *Gross v. Hale-Halsell Co.*, 554 F.3d 870, 877 (10th Cir. 2009) (quoting *Halkias v. Gen. Dynamics Corp.*, 137

F.3d 333, 336 (5th Cir. 1998)).

Accordingly, the courts have made clear that "where it only is possible that the business circumstance at issue may occur, such circumstances are not reasonably foreseeable." *In re Flexible Flyer Liquidating Trust*, 511 Fed. App'x 369, 373 (5th Cir. 2013) (citing *Halkias*, 137 F.3d at 336). "Rather, it is the probability of occurrence that makes a business circumstance reasonably foreseeable and thereby forecloses use of the [unforeseeable-business-circumstances] exception." *Id.* (alteration in original) (quoting *Halkias*, 137 F.3d at 336) (internal quotation marks omitted). As a result, "an employer does not have to be caught completely off guard by a dire business circumstance for it to be 'sudden, dramatic, or unexpected.'" *Roquet*, 398 F.3d at 590 (collecting cases).

In this case, the record demonstrates that Penncro unexpectedly lost its largest client, BoA, on October 31, 2014. Doc. 35-1 at 2–4, 78–79. As already mentioned, "a principal client's sudden and unexpected termination of a major contract with the employer" is a textbook case of a "sudden, dramatic, and unexpected action or condition outside the employer's control." 20 C.F.R. § 639.9(b)(1); *see also Carpenters*, 15 F.3d at 1282. Admittedly, because of the forty-five day cancellation window in the Mortgage Servicing Project contract, there was certainly a *possibility* that the BoA contract would be cancelled with little warning. *See* Docs. 35-1 at 2, 12. However, cancellation was by no means a *probability* at the time notice would have normally been due under the Act.[2] Indeed, the series of performance evaluations that Penncro received from BoA from September until November suggested quite the opposite. *See* Doc. 35-2 at 2, 71–

---

[2] The regulations clearly state that: "When all employees are not terminated on the same date, the date of the first individual termination within the statutory 30–day or 90–day period triggers the 60–day notice requirement." 20 C.F.R. § 639.5. Accordingly, because Penncro's employees were not all terminated on the same date, the notice requirement was triggered by the first layoffs in mid-November 2014—making notice due long before Penncro was notified of BoA's termination of the Mortgage Servicing Project.

73. Accordingly, the Court finds that Penncro has carried its burden and there is no question of material fact that the business circumstances that triggered Penncro's layoff were not reasonably foreseeable at the time that notice was required under the Act.

### i. Notice

Once a court determines that an employer was faced with unforeseen business circumstances, it must still evaluate the propriety of the employer's notice. This is so because even where the defense is properly invoked, *some* notice must be given. *Sides v. Macon Cnty. Greyhound Park, Inc.*, 725 F.3d 1276, 1284 (11th Cir. 2013) (citing *Carpenters*, 15 F.3d at 1282 n.11). Specifically, the Act requires that employers faced with unforeseen business circumstances give their employees "as much notice as is practicable." 20 C.F.R. § 639.9.

Like foreseeability, this is a fact-intensive inquiry based on an employer's commercially reasonable judgment. Nevertheless, the Act's regulations are intended to protect the employer's exercise of business judgment and encourage employers to take all reasonable actions to preserve the company and the jobs. *In re Flexible Flyer*, 511 Fed. App'x at 374. Thus, in determining whether an employer has provided "as much notice as is practicable," courts routinely allow employers to delay notice to employees for several days while the company examines the feasibility of alternatives that may allow it to save threatened jobs. *See, e.g., United Steel Workers of Am. Local 2660 v. U.S. Steel Corp.*, 683 F.3d 882, 889 (8th Cir. 2012) (holiday-weekend delay); *Gross*, 554 F.3d at 878 (six-day delay); *Loehrer*, 98 F.3d at 1061–62 (eight-day delay).

The WARN Act mandates that written notice be "specific" and "written in language understandable to . . . employees." 20 C.F.R. §§ 639.7(a)(1), (d). More importantly, it requires that the notice contain four elements:

> (1) A statement as to whether the planned action is expected to be permanent or temporary and, if the entire plant is to be closed, a statement to that effect;
> (2) The expected date when the plant closing or mass layoff will commence and the expected date when the individual employee will be separated;
> (3) An indication whether or not bumping rights exist; and
> (4) The name and telephone number of a company official to contact for further information.

29 C.F.R. § 639.7(d). In addition to these requirements, "[i]f an employer is providing less than sixty[-]days['] notice pursuant to one of the statutory exemptions, the employer must 'provide a brief statement of the reasons for reducing the notice period.'" *Carpenters*, 15 F.3d at 1282 n.11 (quoting 20 C.F.R. 639.9).

Notwithstanding these requirements, 20 C.F.R. § 639.7(a)(4) cautions that "[i]t is not the intent of the regulations, that errors in the information provided in a notice that occur because events subsequently change or that are minor, inadvertent errors are to be the basis for finding a violation of WARN." Based on this language, "courts have held that 'Department of Labor regulations provide that technical deficiencies or omissions in notice do not invalidate notice or result in WARN liability.'" *Nagel v. Sykes Enters., Inc.*, 383 F. Supp. 2d 1180, 1197 (D.N.D. 2005) (collecting cases). "In rejecting a 'strict compliance' approach to the notice requirements, courts have instead 'looked to the purpose underlying the WARN Act and determined whether those purposes were satisfied under the circumstances by the notice that was given to the employees.'" *Id.* (quoting *Schmelzer v. Office of Compliance*, 155 F.3d 1364, 1368 (Fed. Cir. 1998)).

Here, it is undisputed that Penncro gave at least some notice to its employees. On November 10, 2014, the company held a "town hall" style meeting in which all affected employees were advised that BoA had terminated the Mortgage Servicing Project effective December 31, 2014. Docs. 35-1 at 5, 35-3 at 28–36. The same day, written notices were

distributed to affected employees apprising them of the situation. Docs. 35-1 at 5, 80, 35-3 at 28–36. These notices (1) outlined the scope of the layoffs, (2) stated that the layoffs were expected to be permanent, (3) gave the dates on which the mass layoffs would commence and individuals would be separated, (4) listed the name and phone number of an individual in human resources whom employees could contact with further questions, and (5) gave a brief statement of the basis for the reduced notification period. *See* Doc. 35-1. The Court finds this is sufficient for WARN Act compliance.

Although the notice did not indicate whether or not bumping rights existed, the Court finds this fact inapposite for two reasons. First, none of the employees at the affected facility were represented by a union, and therefore, had no bumping rights. *See* Doc. 35-1 at 6. Accordingly, reference to bumping rights was moot. *See Marques v. Telles Ranch, Inc.*, 867 F. Supp. 1438, 1446 (N.D. Cal. 1994), *aff'd*, 131 F.3d 1331 (9th Cir. 1997) *and aff'd in part*, 133 F.3d 927 (9th Cir. 1997). Second, as already explained, the courts have made it clear that an employer need not precisely comply with the notice requirements to avail itself of the business-necessity exception. Indeed, applying this liberal rule, courts have found that the absence of reference to bumping rights—even when such rights existed for employees—was insufficient to impose liability on the employer when the omission was inadvertent and the notice complied with WARN in other respects. *See, e.g.*, *Nagel*, 383 F. Supp. 2d at 1198.

Nor is the fact that the notice was issued several days after the company first received word from BoA that the contract was being terminated fatal to Penncro. Because BoA's first notification was verbal and the contract clearly specified that cancellation was only effective upon written notice, the Court finds that it was commercially reasonable for Penncro to hold out hope that circumstances would change—until the final written notice was received on November

11, 2014. *See Halkias*, 137 F.3d at 334 (finding that it was commercially reasonable for defendant contractor not to have sent notice until last minute in spite of earlier verbal warnings that cancellation was imminent); *Loehrer*, 98 F.3d at 1063 (same). Nevertheless, Penncro issued its notice to employees a day before the final, official blow from BoA. Moreover, Penncro's short, ten-day delay was necessitated by its exploration of alternative options to save the affected jobs—a practice regularly sanctioned by and well within the time constraints allowed by other courts. *See, e.g.*, *United Steel Workers of Am.*, 683 F.3d at 889 (holiday-weekend delay); *Gross*, 554 F.3d at 878 (six-day delay); *Loehrer*, 98 F.3d at 1061–62 (eight-day delay).

### b. Good-faith defense

Plaintiff also argues that it is entitled to summary judgment on Penncro's good-faith defense. Doc. 34. Penncro responds that, if it is found in violation of the Act's notice requirements, it can still avail itself of the good-faith defense because it made every effort to comply with the Act. Doc. 37 at 15–18. The Court is inclined to agree with Penncro. However, because the Court concludes that Penncro has not run afoul of the WARN Act's notice requirements, there is no need to address the applicability of the good-faith exception.[3]

### IV. Conclusion

For the forgoing reasons, it is hereby

**ORDERED** that Plaintiff's Motion for Partial Summary Judgment, Doc. 34, is **DENIED**,

---

[3] The good-faith defense essentially allows a court, in its discretion, to reduce the amount of the liability of an employer that is found in violation of the notice provisions of the Act so long as the employer has proved to the court's satisfaction that the violation was in good faith and the employer had reasonable grounds to believe the act or omission was not in violation of the statute. 29 U.S.C. § 2104(a)(4). To establish the defense, an employer must show a subjective intent to comply with the Act as well as evidence of objective reasonableness by the employer in applying the Act. *Childress v. Darby Lumber Inc.*, 126 F. Supp. 2d 1310 (D. Mont. 2001) (citing *In re Jamesway Corp.*, 235 B.R. 329, 345 (Bankr. S.D.N.Y. 1999)).

and Defendant's Motion for Summary Judgment, Doc. 35, is **GRANTED**. Accordingly, this case will be  **DISMISSED WITH PREJUDICE**.

      SIGNED at Houston, Texas, this 24th day of January, 2017.

                                          MELINDA HARMON
                                UNITED STATES DISTRICT JUDGE